**FILED**

Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
*By jpayton at 12:03 pm, Aug 25, 2015*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE: | Chapter 7 Case |
| | Number 14-10311 |
| STANLEY EARL PURSE | |
| Debtor | |
| | |
| PENTAGON FEDERAL CREDIT UNION | |
| Plaintiff | |
| vs. | Adversary Proceeding |
| | Number 14-01020 |
| STANLEY EARL PURSE | |
| Defendant | |

## OPINION AND ORDER

Before the Court is a motion for summary judgment filed by Pentagon Federal Credit Union ("Pentagon") seeking a determination that Pentagon's claim is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A), §523(a)(2)(B) and §523(a)(6). Pentagon contends Stanley Earl Purse ("Purse") incurred several debts with Pentagon that he never intended to repay and defrauded Pentagon by providing false information about his income and the intended purpose of the proceeds. These are core proceedings pursuant to 28 U.S.C. §157(b) and the Court has jurisdiction under 28 U.S.C. §1334. Because

✎AO 72A
(Rev. 8/82)

disputes of material fact remain, Pentagon's motion for summary judgement is denied.

## UNDISPUTED FACTS

Purse worked as an aircraft mechanic, but after receiving a diagnosis of chronic obstructive pulmonary disease (COPD), he began seeking out new business ventures. He wanted to build his credit and wealth through other endeavors. In such pursuits, Purse claims he became the victim of a fraudulent scheme that injured Pentagon and Purse.

In pursuit of his new business ventures, Purse's son introduced him to Sam Banks in late 2012. Purse stated Sam Banks ("Banks") was a "financial guy" who could help build Purse's credit and wealth through buying and selling properties. Purse 2004 Exam at 30. To facilitate this process, Purse gave Banks his personal information including his social security number, date of birth, and employment information. Purse Dep. at 14; Purse 2004 Exam at 40. Thereafter, Purse began to question how Banks conducted business and decided instead to deal with Bank's business partner, Linda Artis ("Artis") whom Purse believed was a lender who would help him secure credit to finance his business endeavors. Purse 2004 Exam at 30-31. In turn, Artis introduced Purse to Al Banks[1] described as a

---

[1] No known relation to Banks.

2

purportedly well-connected business individual who pitched Purse on the business idea of buying luxury vehicles to lease to others. Purse Dep. at 31-32. Purse formed a business entity called "High Line" or something similar to undertake this business venture. Purse Dep. at 14; Purse Dep. at 31-32. The business plan was to purchase high-end vehicles such as a Porsche and then rent them to customers.

Purse allowed his personal information to be utilized by Artis and Al Banks with the understanding that they were building his credit and establishing credit lines to finance this new business venture. He agreed to pay Artis and Al Banks a fee for their services based upon a percentage of the credit obtained. Purse 2004 Exam at 32-35, 39 and 41. Purse also dealt with Regina Perez ("Perez"), a partner or employee of Al Banks. 2004 Exam at 43.

On October 4, 2012, either Artis or Al Banks submitted an online loan application in Purse's name to Pentagon for a personal auto loan in the amount of $70,000.00 (the "Loan"). The Loan application indicated that Purse's gross monthly income is $8,248 ($98,976.00/year) and that the Loan proceeds were for the purchase of a Porsche (the "Vehicle") from Bob Dance Automotive Group. 2004 Exam at 110; 2004 Exam Plaintiff's Ex. No. 14. Purse states he

3

AO 72A
(Rev. 8/82)

never reviewed or even saw the online loan application.

After the Loan was approved, Purse acknowledges he signed the Truth in Lending Disclosure and promissory note agreeing to repay the Loan, and granting Pentagon a security interest in the Vehicle and representing he would provide Pentagon with the Vehicle's title. 2004 Exam at 111-12; 2004 Exam Plaintiff's Ex. No. 15 (the "Note"). Purse received proceeds from the Loan in the amount of a check for $70,000.00 made payable to Bob Dance Automotive and Purse. 2004 Exam Plaintiff's Ex. No. 16. Purse endorsed the check over to Perez. 2004 Exam at 68, 75, 113-14, 131; 2004 Exam Plaintiff's Ex. No. 16. The endorsement states in pertinent part:

> The payees/endorsers having a legal interest in [the Vehicle] . . . guarantees that: 1. This instrument constitutes payment in full for the [Vehicle]; 2. The payee/endorser will deliver to [Pentagon] a lien-free title, or assist [Pentagon] in securing a title, including providing a statement of lien release if necessary and 3. Payee/endorsers will assist, as appropriate, in having [Pentagon's] lien on the [Vehicle] properly perfected. . . .

2004 Exam Plaintiff's Ex. No. 16. Perez deposited the $70,000.00 check into a Wells Fargo bank account and Perez gave Purse a $35,000.00 cashier's check that he deposited into his own account. 2004 Exam at 131.

4

At the time Purse endorsed the check, he did not have title to or possession of the Vehicle. 2004 Exam at 44, 114; Purse Dep. at 22-24,31-32. He thought Perez would use the proceeds to purchase the Vehicle and obtain the title. Thereafter, Purse states he saw the purported title to the Vehicle that Al Banks and Perez purchased on Purse's behalf, but Perez did not deliver the title to Purse when asked. 2004 Exam 111-12; Purse Dep. at 22-24. Purse also says the signature on the bill of sale for the purchase of a Porsche from Moto Management Inc. is not his signature. Plaintiff's Ex. No. 21; 2004 Exam at 123.

Pentagon contends it would not have made the Loan to Purse had it known: that the Loan proceeds would not be used to purchase a personal automobile; that Purse's income was less than that stated in the application; that Purse did not have, and would never have, title to the Vehicle; or that Purse would fail to repay the Loan under the Note. LeGrande Aff. ¶10.

Substantially contemporaneously with the Loan, Purse also obtained a Pentagon credit card, as a result of Artis and Al Banks applying online for a PenFed Premium Travel Rewards American Express credit card (the "Credit Card") on his behalf. 2004 Exam at 116-17, 119; Purse Dep. at 20, 24-25. The Credit Card application reflects Purse's monthly income at $8,248.00 ($98,976.00/year). 2004 Exam,

5

AO 72A
(Rev. 8/82)

Plaintiff's Ex. 18.  Upon approval, Purse received the Credit Card and used it to make a single payment to Artis for the agreed upon commission.  2004 Exam at 118-119.

The evidence concerning Purse's income is confusing.  The Loan and Credit Card applications state Purse had an annual income of $98,976.00.  In his deposition, Purse stated his income in 2012 was more like $78,000.00 to $80,000.00 in 2012.  Purse Dep. at 49-50.  When asked if his income in 2012 was $7,400.00/month ($88,800.00 annually) he stated yes and when asked if it was $7,600.00/month ($91,200.00 annually) in 2012, Purse answered yes.  Purse Dep. at 52.  Purse's joint 2012 tax return shows a household income of $97,122.00.  Plaintiff's Ex. No. 4.  His Statement of Financial Affairs filed in connection with his 2014 bankruptcy petition reflects his 2012 income was $65,000.00.  SOFA, Dckt. No. 1, Chap. 7 Case No. 14-10311.  Debtor also testified that he is an hourly employee and sometimes he receives overtime so his income varies.  Purse's 2004 Exam at 58.

At the time he received the Credit Card and began using it, Purse acknowledges that he did not have enough income to make payments to Pentagon.  Purse Dep. at 53-54.  However, Purse states he expected to make sufficient money from his business venture to cover all his expenses and he kept some of the proceeds to make

6

payments to Pentagon until this income was depleted.

Purse states he was involved in numerous transactions with third party lenders. He claims he thought that high-end vehicles were being purchased in his name through some of the credit lines. Purse says he was shown the title to a Porsche that was supposedly bought in his name, but he never had physical possession of the actual title. Purse Dep. at 17, 22-24; Purse 2004 Exam at 112. At his 2004 examination, Purse testified he ultimately realized in late December of 2012 or early 2013 that no vehicles were actually being purchased on his behalf when he noticed the numbers on the titles being shown to him indicated he had purchased the same car twice. Purse 2004 Exam at 38 and 126. Thereafter, Purse states he kept trying to see if Artis, Al Banks, Perez, and Banks would "do the right thing and straighten up the mess at the time about the titles. . . ." Purse 2004 Exam at 126.

Then, Purse says he ultimately realized he had been defrauded in late 2012 or early 2013, after he started receiving calls from Fifth Third Bank that a $50,000.00 loan had been taken out in his name without his knowledge. Purse 2004 Exam at 127. In response, Purse contacted the Richmond County Sheriff's Department and filed a police report in March 2013 indicating that Al Banks had opened the bank account without his permission. Purse 2004 Exam Ex.

No. 23.  The Federal Bureau of Investigation and the Secret Service began investigating the matter.  Purse 2004 Exam at 53-54.  Purse contends this shows he had no fraudulent intent.  Ultimately, Purse filed a chapter 7 bankruptcy petition in 2014.

Pentagon moves for summary judgment pursuant to 11 U.S.C. §523(a)(2)(A),  §523(a)(2)(B) and §523(a)(6) arguing it never would have extended credit to Purse if it had known:  Purse's income was really $70,000.00 to $80,000.00; or that Purse intended to purchase a vehicle as part of a business scheme; or that Purse would be unable to obtain title to the Vehicle or repay the debt. Conversely, Purse claims he was a victim of fraud and did not have the intent to defraud or cause injury to Pentagon and that Pentagon's reliance on the information in the online application was not reasonable.

### CONCLUSIONS OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.  The moving party has the burden of proof.  Medicomp, Inc. v. United

8

Healthcare Ins. Co., 562 F. App'x 754, 756 (11th Cir. April 1, 2014). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the non-moving party. All reasonable doubts and inferences should be resolved in favor of the opponent." Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1502 (11th Cir. 1985) (citations omitted), cert. denied, 475 U.S. 1107 (1986).

Discharge in bankruptcy afford the honest but unfortunate debtor the opportunity of a fresh start and is a cornerstone of the Bankruptcy Code. See Grogan v. Garner, 498 U.S. 279, 286-87 (1991). Exceptions to discharge are construed strictly against the creditor and liberally in favor of debtor. In re St. Laurent II, 991 F.2d 672, 680 (11th Cir. 1993); In re Walker, 48 F.3d 1161, 1164-65 (11th Cir. 1995). Pentagon has the burden of establishing that Purse is not entitled to discharge its debt by the preponderance of the evidence. Grogan v. Garner, 498 U.S. 279 (1991); In re Metz, 150 B.R. 821 (Bankr. M.D. Fla. 1993) (standard of proof is preponderance of the evidence).

## 11 U.S.C. §523(a)(2)(A).[2]

In order for summary judgment to be granted under 11

---

[2] While this opinion is organized under §523 sub-headings, the analysis and reasoning cited in each section applies to all subsections.

U.S.C. §523(a)(2)(A),[3] Pentagon must prove that: (1) Purse obtained money, property, or credit from Pentagon by making a false representation, false pretenses, or actual fraud; (2) Purse acted with the intent to deceive Pentagon; (3) Pentagon justifiably relied upon that representation; and (4) the creditor sustained a loss as a result of the representation and reliance. In re Harris-Onaxis, 479 B.R. 910, 916 (Bankr. N.D. Ga. 2011); In re Dover, 185 B.R. 85, 87-88 (Bankr. N.D. Ga. 1995) (citing St. Laurent v. Ambrose, 991 F.2d 672, 676 (11th Cir. 1993)); In re Van, 67 F.3d 277, 279 (11th Cir. 1995).

A false representation is an "express misrepresentation." See In re Gilmore, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998). "False pretense involves an implied misrepresentation or conduct intended to create and foster a false impression." In re Appling, 527 B.R. 545, 549-50 (Bankr. M.D. Ga. 2015) (citing Minority Equity Capital Corp. v. Weinstein (In re Weinstein), 31 B.R. 804, 809

---

[3]   11 U.S.C. §523(a)(2)(A) states in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

10

(Bankr. E.D.N.Y. 1983). "Legal or constructive fraud, which involves an act contrary to a legal or equitable duty that has a tendency to deceive, yet not originating in an actual deceitful design, is insufficient." Harris-Onaxis, 479 B.R. at 915. "Reckless disregard for the truth or falsity of a statement can also supply the necessary basis for a determination of non-dischargeability [under §523(a)(2)(A)]." Birmingham Trust Nat'l Bank v. Case, 755 F.2d 1474, 1476 (11th Cir. 1985), superseded on other grounds Pub. L. No. 98-353, 98 Stat. 333 (1984). It is well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under §523(a)(2)(A)." In re Appling, 527 B.R. 545, 550 (Bankr. M.D. Ga. 2015). However, for §523(a)(2)(A) grounds, the statement or representation must not be a "statement respecting the debtor's . . . financial condition." 11 U.S.C. §523(a)(2)(A). See generally In re Sharp, 340 F. App'x 899, at *1 (4th Cir. August 14, 2009)("Significantly, subsection (2)(A) does not apply if the disputed statement is "respecting the debtor's . . . financial condition.").

In this case, there are disputes of material fact regarding Purse's intent to deceive and whether Pentagon's reliance upon the applications was justified. First, Pentagon contends that

Purse fraudulently misrepresented his income as well as the purpose of the Loan and Credit Card and how those purported representations fall within the scope of §523(a)(2)(A). At this point, the record is unclear on these points. As previously discussed, the factual record is unclear on Purse's actual 2012 income leaving a question of material fact as to Purse's actual income and his intent when applying for credit from Pentagon.

Pentagon also argues that contrary to the stated purpose represented in the Loan application, Purse never intended to purchase the Vehicle. There is a factual dispute as to Purse's intent. The endorsement on the check requires the endorsers to assist Pentagon in obtaining title. Purse acknowledges he never delivered the title to Pentagon, but he testified he had seen title to the Vehicle and tried to obtain it from Perez and she would not give it to him. 2004 Exam 111-12; Purse Dep. at 22-24. The Court needs to observe Purse's demeanor and assess his credibility.

The intent to deceive is largely an assessment of the credibility and demeanor of the debtor. In re Miller, 39 F.3d 301, 305 (11th Cir. 1994). Generally, a debtor's fraudulent intent cannot be determined on summary judgment. See In re Williamson, 2013 WL 441418, *5 (Bankr. S.D. Ga. Feb. 1, 2013)(stating the general rule that a debtor's intent usually cannot be resolved at the summary

AO 72A
(Rev. 8/82)

judgment stage).   While it is true that under certain facts and circumstances summary judgment is appropriate and fraudulent intent may be inferred from circumstantial evidence; and that a reckless disregard for the truth can provide the basis to infer an intent to deceive, this is not the current situation. See generally Birmingham Trust Nat'l Bank v. Cast, 755 F.2d at 1476; In re Harris-Onaxis, 479 B.R. at 916.  This case may ultimately result in Pentagon's debt being declared non-dischargeable pursuant to §523(a)(2)(A), §523(a)(2)(B) and/or §523(a)(6), but at the summary judgment stage, where all reasonable doubts and inferences should be resolved in favor of Purse, summary judgment is inappropriate given the facts and circumstances of this case.

Furthermore, at this point in the proceedings, the Court cannot determine from the record whether Pentagon's reliance on the applications was justifiable. "Justifiable reliance is gauged by 'an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" In re Vann, 67 F.3d 277, 283 (11th Cir. 1995) citing Keeton Prosser & Keeton on Torts §108, at 751 (5th ed. 1984) (emphasis added). "[I]t is only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a

13

cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." Id. (brackets in original). "Justifiable reliance imposes no duty to investigate unless there is obvious reason for inquiry." In re Hooks, 238 B.R. 880, 885 (Bankr. S.D. Ga. 1999) citing Fields v. Mans, 516 U.S. 59, 71-72 (1995). In this case, Pentagon is a sophisticated lender and questions remain whether its providing of more than $70,000.00 in credit was justified by relying upon two online credit applications.

Questions also remain as to Purse's repayment intentions. "The debtor's insolvency or inability to pay does not by itself provide a sufficient basis for inferring the debtor's intent. A debtor's honest belief that a debt would be repaid in the future, even if in hindsight found to have been very unrealistic, negates any fraudulent intent." In re Jackson, 348 B.R. 595, 599 (Bankr. M.D. Ga. 2006) citing 4 Collier on Bankruptcy ¶523.08[1][d] (15th ed. rev. 2006). Debtor contends he withheld money from the loans to cover Pentagon and expected the income from the business to support these loan payments. Debtor's overall credibility and demeanor need to be considered to make this determination.

Given the facts and circumstances of this case, summary judgment is denied as to Pentagon's §523(a)(2)(A) claim.

14

## 11 U.S.C. §523(a)(2)(B).

Pentagon also contends its debt is non-dischargeable pursuant to §523(a)(2)(B)[4] because the credit applications are writings, are materially false, pertain to Purse's financial condition, and by which Purse fraudulently obtained credit from Pentagon. For its debt to be non-dischargeable under 11 U.S.C. §523(a)(2)(B) Pentagon must prove that the debt was obtained by a writing: (1) that is materially false; (2) respecting Purse's financial condition; (3) on which Pentagon reasonably relied; and (4) that Purse caused to be made or published with the intent to

---

[4]  11 U.S.C. §523(a)(2)(B) states in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

(B) use of a statement in writing--
     (i) that is materially false;
     (ii) respecting the debtor's or an insider's financial condition;
     (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
     (iv) that the debtor caused to be made or published with intent to deceive.

15

deceive.[5]  The writing must pertain to Purse's financial condition to be actionable under §523(a)(2)(B).  See In re Hale, 139 B.R. 41, 43 (Bankr. M.D. Fla. 1992)(defining what constitutes a "writing respecting a debtor's financial condition").

Again, as previously stated, there is a question of fact as to whether Purse had the requisite intent to defraud Pentagon in by representing he would purchase the Vehicle for personal purposes and possibly overstating his income.  Pentagon also contends Purse misstated or concealed the fact that the Credit Card was for a business purpose.  However, the Credit Card application does not expressly state an intended purpose.  The Loan Application states the purpose is to purchase a motor vehicle.  The Court needs to observe Purse's demeanor and judge his credibility as to the intended purpose of the Credit Card and the charges thereon.

There also remains a question of whether Pentagon's reliance was reasonable and whether the alleged false statements were material.

> Material falsity contains two elements: 1) a
> falsehood 2) that is significant in both amount

---

[5]  While Purse did not fill out the applications, he is liable for his agents' actions, done with his permission.  See In re Jones, 197 B.R. 949, 959-960 (Bankr. M.D. Ga. 1996)(where a debtor has ratified or adopted the other's statements, "[t]he fact that another person filled out the [financial] statement will not insulate a debtor from liability").

> and effect on the creditor receiving the
> financial statement. 'Materiality,' ... for
> purposes of §523(a)(2)(B) requires more than
> merely examining the truth of the information
> provided.   A second step is required. The
> information must not only be substantially
> inaccurate, but also must be information which
> affected the creditor's decision making process
> . . . . The information must have actual
> usefulness to the creditor and must have been
> an influence on the extension of credit.
> Although there is substantial similarity
> between such analysis of "materiality" and the
> element of "reasonable reliance" ... analysis
> of the creditor's use of the requested
> information is appropriate in both contexts.

In re Jones, 197 B.R. 949, 955-56 (Bankr. M.D. Ga. 1996).  The amount

of Purse's income must be determined in order for the Court to

analyze the amount of the discrepancy in Purse's income and whether

it is material.  At this stage in the proceedings, all reasonable

inferences are resolved in favor of the non-movant.  Amey, Inc. v.

Gulf Abstract & Title, Inc., 758 F.2d at 1502.  The determination of

whether a creditor's reliance is reasonable is a fact intensive

analysis.  In re Jones, 197 B.R. at 961.

> Whether a creditor's reliance was reasonable is
> a factual determination to be made in light of
> the totality of the circumstances.  Among the
> circumstances that might affect the
> reasonableness of a creditor's reliance are:
> (1) whether the creditor had a close personal
> relationship or friendship with the debtor; (2)
> whether there had been previous business
> dealings with debtor that gave rise to a
> relationship of trust; (3) whether the debt was
> incurred for personal or commercial reasons;

17

> (4) whether there were any "red flags" that
> would have alerted an ordinarily prudent lender
> to the possibility that the representations
> relied upon were not accurate; and (5) whether
> even minimal investigation would have revealed
> the inaccuracy of the debtor's representations.

In re Jones, 197 B.R. at 962 (citing BancBoston Mortgage Corp. v. Ledford (In re Ledford), 970 F.2d 1556,1560 (6th Cir. 1992), cert. denied, 507 U.S. 916 (1993). Other factors include the creditor's "standard practices in determining credit-worthiness" and the "standards or customs of the creditor's industry in evaluating credit-worthiness." In re Cohn, 54 F.3d 1108, 1117 (3d Cir. 1995). Just because Pentagon contends there are "no red flags" does not equate to reasonable reliance as it is just a factor. See In re Jones, 197 B.R. at 962; In re Cohn, 54 F.3d at 1117 (listing several factors). No investigation or due diligence leading to no red flags does not necessarily equate to reasonable reliance at the summary judgment stage. In re Jones, 197 B.R. at 962 (listing many factors that go into analyzing reasonable reliance including whether a minimal investigation would have revealed the inaccuracy of the debtor's representation). In this case, there is no real evidence of any prior dealings or close relationship between Pentagon and Purse that would give rise to any heightened level of scrutiny or trust. In addition, there is a question of whether Purse believed he was purchasing the Vehicle as part of a legitimate business

18

venture.  Lastly, there is insufficient evidence of Pentagon's due diligence practices.  As to the next factor, a minimal investigation or inquiry into income records or pay advices may have revealed an income discrepancy raising questions whether Pentagon's reliance was reasonable.    At this point in the proceedings factual disputes remain and therefore summary judgment is denied on Pentagon's 11 U.S.C. §523(a)(2)(B) claim.

**11 U.S.C. §523(a)(6)**.

Pentagon contends its debt is non-dischargeable because the debt is one obtained for willful and malicious injury by Purse to Pentagon.  See 11 U.S.C. §523(a)(6).  Pursuant to 11 U.S.C. §523(a)(6) a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge.  11 U.S.C. §523(a)(6).  A debt for "a deliberate or intentional injury not merely a deliberate or intentional act that leads to injury" is nondischargeable. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).  An injury is willful when the injury or consequence itself was intended or substantially certain to result.  Id. at 61; Hope v. Walker (In re Walker), 48 F.3d 1161, 1165 (11th Cir. 1995). An injury is malicious when it is "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will."   Walker, 48 F.3d at 1164.  "[T]he injury must invade the

19

creditor's legal rights . . . 'in the technical sense, not simply harm to a person.'" In re Musilli, 379 F. App'x 494, 498 (6th Cir. 2010)(listing conversion as a type of misconduct that satisfies willful and malicious injury). For the reasons previously discussed, Pentagon has not established at this summary judgment stage that Purse intended to injure Pentagon as contemplated by §523(a)(6). A debt arising from a knowing breach of contract is not the type of debt excepted from discharge under 11 U.S.C. §523(a)(6). See Kawaauhau, 523 U.S. at 62 (rejecting an interpretation of §523(a)(6) which would render a knowing breach of contract nondischargeable). Purse claims to be a victim of fraud and contends he fully expected to make money in the new business venture. At the summary judgment stage all reasonable inferences must be resolved in Purse's favor and based upon the record presented, the Court cannot conclude Pentagon's debt is non-dischargeable pursuant to 11 U.S.C. §523(a)(6). Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d at 1502.

For these reasons, Pentagon's motion for summary judgment is ORDERED DENIED.

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 25th Day of August 2015.

AO 72A
(Rev. 8/82)